UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTY BROWN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16 C 1071 |
| | ) | |
| WILLIAM RAINEY HARPER COLLEGE, | ) | Judge Rebecca R. Pallmeyer |
| | ) | Magistrate Judge Maria Valdez |
|     Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS OF THE SECOND AMENDED COMPLAINT**

NOW COMES Defendant, William Rainey Harper College, (hereinafter the "College"), by its counsel, Caroline A. Roselli and Zaria N. Udeh, of ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD., and hereby submits this Brief in support of its Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, and states as follows:

## I.    INTRODUCTION

Student A ("Plaintiff") was dismissed from the College's Practical Nursing Program ("PN Program") after failing to meet the academic requirements of the program (SOF 17-19). Plaintiff failed to achieve satisfactory grades in her nursing courses, even after a previous opportunity in the 2014-2015 school year to proceed in the PN Program despite unsatisfactory performance on examinations (SOF 11-17). Plaintiff now alleges that she was subjected to race discrimination in violation of Title VI of the *Civil Rights Act of 1964*. 42 U.S.C. § 1981 *et seq.* Plaintiff also claims she was subjected to retaliation, under 42 U.S.C. § 1983, for free speech and exercise.

The College is entitled to summary judgment on all counts because there is no genuine issue of material fact that Plaintiff did not meet the academic requirements of her NUR 102 and

1

109 courses. As such, this Court should grant Defendants' Motion for Summary Judgment as to all Counts of the Complaint.

## II. ARGUMENT

### A. The Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material "only if it might affect the outcome of the case under the governing law." *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

This Court must consider the evidence in the light most favorable to the party opposing summary judgment, and the movant bears the burden of establishing a lack of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598 (1970). Once the moving party has met its initial burden, the non-moving party may not rest on conclusory allegations, but must instead come forward with evidence demonstrating the existence of each element of its case upon which it would bear the burden of proof at trial. Fed. R. Civ. P. 56(e); *Matney v. County of Kenosha,* 86 F.3d 692,695 (7th Cir. 1996). Thus, if a party fails to sufficiently establish the existence of an essential element on which such party bears the burden of proof at trial, summary judgment is proper due to the fact that there can be no genuine issue of any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317*,* 323 (1986).

To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996). Evidence which is merely colorable or not significantly probative cannot defeat summary judgment. *Anderson*, 477 U.S. at 249-50; *Senner v. Northcentral Tech. College*, 113 F.3d 750, 757 (7th Cir. 1997) ("A party needs more than a scintilla of evidence [. . .] to defeat summary judgment.").

      B.      **The College is Entitled to Summary Judgment Because Plaintiff's Claim of Race Discrimination under Section VI Fails as a Matter of Law**

The comparator students which Plaintiff complains about in her race discrimination count are not similarly situated to Plaintiff. There is no genuine issue of material fact that Plaintiff's classmates, STUDENT S and STUDENT R, passed NUR 109 while Plaintiff did not pass the class. Thus, Defendant is entitled to summary judgment.

Whether the College discriminated against Plaintiff based on her race by dismissing her, but not dismissing STUDENT S and STUDENT R, is analyzed under Title VI's intentional discrimination standard. *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001). To avoid summary judgment, the Plaintiff must present evidence sufficient to permit a reasonable jury to conclude that she was dismissed from the PN Program for a racial reason. *Brewer v. Board of Univ. of Ill.,* 479 F.3d 908, 921 (7th Cir. 2007), citing *Alexander v. Sandoval*, 532 U.S. 275, 280, (2001). In a Title VI action, a Plaintiff's speculative and unsupported contention that a school's decision was motivated by discrimination is insufficient to survive summary judgment. See *Thompson v. Bd. Of the Special Sch. Dist. No.1*, 144 F. 3d 574, 581 (8th Cir. 1998)(granting summary judgment to school when the Plaintiff offered no evidence that race was the motivating factor in his suspensions.)

The elements of a prima facie case under Title VI are membership in a protected class, meeting the school's legitimate educational expectations, an adverse educational action

3

and worse treatment than that of similarly situated students[1] not in the protected class. *Brewer*, 479 F.3d at 921. The legal standard is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole." *Ortiz v. Warner Enterprises, Inc.*, 834 F.3d 760, 765. In *Ortiz*, the court applied the "Reasonable Factfinder Method" to a claim for discrimination under § 1981. The requirements for finding discrimination are the same under § 1981 and Title VII. *Egonmwan v. Cook Co. Sheriff's Dept.,* 602 F.3d 845, 850 (7th Cir. 2010). Likewise, the requirements for proving discrimination, under Title VII and Title VI, are the same. *Brewer*, 479 F.3d at 921. Accordingly, the *Ortiz* "Reasonable Factfinder Method" will be applied here for Plaintiff's Title IV claim.

### 1. Plaintiff Was Dismissed Due to Poor Academic Performance

There is no genuine issue of material fact that Plaintiff was dismissed due to poor academic performance in NUR 109. Plaintiff has failed to present evidence of discrimination under the *Ortiz* "reasonable factfinder method." The evidence as a whole would not permit a reasonable factfinder to conclude that the Plaintiff was dismissed from the PN Program on account of her race. The Plaintiff's dismissal was due to poor academic achievement (SOF 17-18). She failed to achieve a passing score in NUR 109 after re-entering the program and receiving remediation, academic tutoring, and testing accommodations (SOF 16-17, 23).

The PN Program policy clearly states that a student who fails to achieve a passing grade in a required nursing course (such as NUR 109) is subject to dismissal (SOF 7-9). As a result of a previous failure in NUR 102 (SOF 11-12), Plaintiff was allowed to re-enroll pursuant to a

---

[1] This method of proof was established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff can raise the inference of discrimination by identifying a similarly situated employee outside the protected class who was treated more favorably by the employer. See, e.g., *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612 (7th Cir. 2000).

conditional Success Contract (SOF 16-17). The Success Contract required Plaintiff to pass her nursing courses and otherwise meet the expectations of the PN Program. Plaintiff failed NUR 109 because her overall test average was a 73% and below the 76% passing standard (SOF 16). The Plaintiff was dismissed because she failed to achieve a passing grade in NUR 109 pursuant the PN Program policy and the Success Contract.

Plaintiff calls into question the alleged behavior of the NUR 109 instructor such as calling Plaintiff a "nigger" as she walked away, changing her clinical schedule, and altering her test scores (SOF 22). The first two allegations have no connection to Plaintiff's academic performance. Moreover, all three of the allegations were investigated by the Provost and a separate investigator and none were determined to be founded (SOF 22-24).

Plaintiff was afforded the opportunity to appeal her dismissal to the Provost (SOF 23). The Provost issued Plaintiff an appeal determination letter with the outcome of her appeal of NUR 109 grade (SOF 23). The basis for the denial of Plaintiff's appeal by the Provost was that the 73% exam average earned by Plaintiff did not meet the PN Program standard of a 76% exam average. Additionally, the Provost found no support for Plaintiff's claims that her test grades were altered in any way (SOF 23).

Plaintiff's academic record supports the conclusion that she was dismissed because of her failure to meet the academic requirements of the PN Program. There is simply no evidence that there was any racial motivation. Plaintiff's deposition testimony reveals that she has enrolled in classes at the College intermittently since 2003 (SOF 5). Plaintiff failed seven courses during her enrollment at the College prior to the 2014-2015 school year in question (SOF 5). Plaintiff has had to repeat courses such as NUR 180 and BIO 160. Plaintiff was conditionally accepted in to the College Nursing Program for the Fall 2011 nursing class (SOF 5). However, the

5

acceptance was withdrawn when Plaintiff could not pass the requisite NUR 180 class with a grade of "C" or better (SOF 5). Plaintiff has also required remediation Success Plans in other courses such as NUR 112 and NUR 102 (SOF 5).

Plaintiff has not provided any evidence that her dismissal was motivated by race. The Plaintiff testified that her NUR 109 instructor did not like Plaintiff as an individual (SOF 22). Plaintiff did not identify any direct evidence, such as an admission of discriminatory animus, that her dismissal was motivated by race. Quite the opposite - Plaintiff and the investigator described the College administrators, Chavis and Marwick, as going to great lengths to assist Plaintiff in being successful in the PN Program (SOF 24).

Remarkably, there were 17 other students in the PN Program in 2014-2015, a majority of which were racial minorities (SOF 5). All 17 graduated. (SOF 5). The record as a whole shows that the Plaintiff's race was not a motivating factor in her dismissal. In the end, "Plaintiff cannot refute that her 'problems were not related to [her] race – they were related to [her]. The fact that she is a member of a protected class does not transform them.'" *See Branson v. St. Elizabeth School of Nursing*, 2017 WL 2418396 *5, (citing *Herron v. DaimlerChyrlser Corp.,* 388 F.3d 293, 303 (7th Cir. 2004).

### 2. Plaintiff Failed to Present Evidence of Similarly Situated Students in a Non-Protected Class

Plaintiff alleges in her Complaint that she was similarly situated with two Caucasian classmates, STUDENT R and STUDENT S (SOF 4, 18). Plaintiff alleges that these classmates also failed and were more favorably treated because they were allowed to continue on in the PN Program (SOF 18). Plaintiff is correct in comparing herself to STUDENT R and STUDENT S to a point. The PN Program requires nursing students to earn an exam average score of 76% or higher in every nursing course, and receive a "passing" evaluation in clinical, to continue in the

6

program (SOF 10). Like Plaintiff, STUDENT R and STUDENT S failed to receive a sufficient exam average score in NUR 102 (SOF 16). Like Plaintiff, STUDENT R and STUDENT S were dismissed from the PN Program in March 2015 as a result of failing NUR 102 (SOF 16). Like Plaintiff, STUDENT R and STUDENT S were allowed to re-enter the PN Program under a conditional Success Contract (SOF 16-17). Finally, like Plaintiff, STUDENT R and STUDENT S were made to make-up the first week of missed instruction and engage in clinical and orientation scheduling for NUR 109 after starting late due to the dismissal and subsequent re-entry into the program (SOF 17). However, that is where the similarities end.

Unlike Plaintiff, STUDENT S and STUDENT R did not fail the clinical component of NUR 102 and therefore did not require a Clinical Success Contract (SOF 18). Additionally, unlike Plaintiff, STUDENT S and STUDENT R met the conditions of the Success Contract (and the requirements of the PN Program) by passing the NUR 109 course (SOF 18). STUDENT R and STUDENT S were permitted to continue on in the PN program because they successfully completed NUR 109 (SOF 18). They both received their PN Program certificate because they successfully completed the NUR 104 Capstone and re-took the NUR 102 course over the summer in 2015 (SOF 18). Plaintiff is not similarly situated to STUDENT S and STUDENT R because she did not fulfill the terms of the Success Contract or the PN Program requirements when she failed NUR 109.

Summary judgment is the "put up or shut up" moment of the lawsuit. *C.S. v. Couch*, 843 F.Supp.2d 894, 916 (N.D. Ind. 2011) (citing *Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007). Plaintiff has failed to come forth with evidence that STUDENT R and STUDENT S were similarly situated or that Plaintiff was the subject of discrimination under Title VI. Absent any such evidence, Plaintiff's claim must fail.

### 3. There is No Evidence of Discrimination under the McDonnell Douglass "burden-shifting framework"

The court in *Ortiz* stated that its ruling does not undermine the "burden-shifting framework" created by *McDonnell Douglas Corp. v. Green*. See *Ortiz,* 834 F. 3d at 766. Under *McDonnell Douglas* "burden-shifting framework," adjusting the terms for the educational content, the Plaintiff must show that she belonged to a protected class, met the school's legitimate educational expectations, an adverse educational action and worse treatment than that of similarly situated students not in the protected class. See *Brewer*, 479 F.3d at 921.

Plaintiff is unable to set forth a prima facie claim of Title VI discrimination under the McDonnell Douglas burden shifting test. The Plaintiff has failed to meet the second and fourth elements of the test. The PN Program has set grading standards for students to meet before allowing its students to graduate with a certificate (SOF 9-11). These grading standards are reasonable and in line with other nursing programs. See *Branson,* 2017 WL 2418396 *5. The Plaintiff failed to meet the school's expectations by not achieving a passing score in NUR 109 (SOF 17-19). Therefore, the Plaintiff was not meeting the school's legitimate expectations when she was dismissed.

Second, Plaintiff has not shown that she was treated worse than similarly situated students not in the protected class. In an employment context, for a Plaintiff to establish the existence of a similarly situated employee, courts require a Plaintiff to establish that both employees were subjected to the same standards, have the same supervisor, and engaged in similar conduct. *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 540 (7th Cir. 2007). Plaintiff must show that there is someone who is directly comparable to her in all material aspects. *Patterson*

*v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). *See Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) (An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated.) A Plaintiff's subjective belief alone cannot create a triable issue of fact to preclude summary judgment. *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Circ. 1989). In the education context, the Seventh Circuit Court of Appeals has stated that it is not a "super enrollment committee" charged with evaluating the general quality of education decisions. *Brewer*, 479 F.3d at 922. Plaintiff, here, has not shown that she was similarly situated to STUDENT R or STUDENT S because there are material differences in their performances in the PN Program. They passed NUR 109, and Plaintiff was dismissed after failing to pass NUR 109 for the 2014-2015 Spring Term (SOF 18).

Even if this Court reaches the conclusion that the Plaintiff sufficiently established a prima facie case of discrimination on the basis of race, the College is entitled to summary judgment because its decision to dismiss Plaintiff was based upon a legitimate, non-discriminatory reason. Plaintiff failed to meet the legitimate educational requirements of the PN Program (SOF 17-19).

Plaintiff has provided no evidence that the reason was merely pre-textual. *See E.E.O.C. v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 149 (7th Cir. 1996). Plaintiff has alleged unusual acts by her NUR 109 instructor, which her instructor has denied (SOF 22-24). However, "[a] pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." *Grube v. Lau Indus, Inc.*, 257 F.3d 723, 730 (7th Cir. 2001). Consequently, the College is entitled to summary judgment on Plaintiff's Title VI claim.

## C. The Defendant's Motion for Summary Judgment Should Be Granted Because Plaintiff's Claim of First Amendment Retaliation Fails as a Matter of Law

Plaintiff alleges she heard a voicemail directed to her phone inadvertently by the College's Director of Nursing, Julie D'Agostino. Plaintiff alleges that the voicemail message was responding to Plaintiff's clinical professor, Monica Sweeney's, concerns about Student A's practice of praying with her patients (SOF 19-20). Plaintiff alleges the call reflects bias on the basis of her religion. Plaintiff further claims that she was harassed by professors and students and ultimately removed from the PN Program because she reported this voicemail to the United States Department of Education, Office of Civil Rights (SOF19-22).

Whether the College discriminated against Plaintiff based on her protected First Amendment activities, is based on whether (1) she engaged in protected expression, (2) she suffered a deprivation likely to deter protected activity, and (3) the plaintiff's activity was a motivating factor in the defendant's retaliation. *CF. Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006) (delineating standard in employee speech context); *Galdikas v. Fagan,* 342 F.3d 684, 698 (7th Cir. 2003) overruled on other grounds by *Spiegla v. Hull,* 371 F.3d 928, 941–42 (7th Cir. 2004).

The third element amounts to a causation inquiry. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). To establish a causal link between the protected expression and a subsequent action by the College, the Plaintiff must show that the protected conduct was a substantial or motivating factor in the decision. *Id.* "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Id.* (citing *Spiegla*, 371 F.3d at 942.)

Circumstantial proof, such as the timing of events or the disparate treatment of similar individuals, may be sufficient to establish the defendant's retaliatory motive. *Id.* If the plaintiff

makes this threshold showing, the burden then shifts to the defendant to produce evidence that they would have fired the plaintiff even in absence of the protected speech. *Id.* Finally, assuming the defendant carries that burden, the plaintiff then must persuade a fact-finder that the defendant's proffered reasons were pretextual and that retaliatory animus was the real reason that the defendant fired plaintiff. *Id.*

> **1. There is no genuine issue of material fact that Plaintiff cannot establish that Plaintiff suffered a Deprivation or Plaintiff's activity of complaining about the voicemail was a motivating factor in the Defendant's retaliation**

Plaintiff has not presented any evidence that D'Agostino's inadvertent voicemail reflects any bias. Plaintiff was dismissed from the PN Program for failure to maintain passing grades consistent with the requirements outlined in the PN Program. Plaintiff's complaint had nothing to do with her dismissal from the program. Further, the dismissal would have occurred absent the complaints.

Plaintiff alleges that Sweeny lowered her grade in the NUR 102 clinical course as a result of her complaints to the Dean, Provost and OCR. However, Plaintiff has not put forth any evidence that Sweeny was even aware of the complaints or that her decision was motivated by improper animus. Plaintiff asserts that the content of D'Agostino's voicemail invited Sweeny to have some input into the dismissal decision (SOF 19-20). However, Plaintiff has not established any facts to suggest that Sweeny was aware of the voicemail or its contents.

The incident between Sweeny and Plaintiff which led Sweeny to provide Plaintiff with a failing grade occurred on February 26, 2018 (SOF12-16). The grade was communicated to Plaintiff in person on March 5, 2015 and via email on March 8, 2015 (SOF 16). Plaintiff admitted that she shared the contents of the voicemail with Dean Chavis and D'Agostino, on March 9, 2105 (SOF 21). Plaintiff did not contact the Office for Civil Rights ("OCR") to file her

11

complaint until March 18, 2015 (SOF 20), and Plaintiff admitted she does not know when the College was contacted by OCR (SOF 20). Plaintiff's failing grade in the NUR 102 course provided a further basis for Plaintiff's dismissal from the program (SOF 12 an 16). Plaintiff's failure to meet the PN Program requirements in both the clinic and the course resulted in her being dismissed from the PN Program on March 10, 2015 (SOF 12 ans 16).

Moreover, though, Plaintiff was allowed to return to the program by the Provost on March 13, 2015. Plaintiff did not suffer any deprivation when she was allowed to remain in the PN Program. Thus she did meet the second element of a prima facie case for First Amendment retaliation. Plaintiff alleges damages in the form of lost income and housing as a result of the deprivation she suffered, however, even if this Court found that she met the element of deprivation, any loss occurred before Plaintiff's dismissal from the PN Program (SOF 24-25). Plaintiff's position at Walgreens, during the relative timeframe, was eliminated prior to her dismissal from the PN Program (SOF 24-25). Likewise, Plaintiff failed to pay her lease on her apartment for the months of April and May 2015, prior to her dismissal from the PN Program (SOF 24-25).

To constitute proof of improper animus, the evidence must relate to the motivation of the decision maker responsible for the contested decision, or to the motivation of those who provide input in the decision. See *Ezell v. Potter, 400 F.3d 1041*, 1051 (7th Cir.2005). As far as this record indicates, Sweeny was neither. There is no evidence that Sweeny was aware of the complaints prior to giving Plaintiff a failing grade (SOF 21).

Ultimately there is no evidence of animus. There is no evidence that Sweeny was the final decision-maker relating to Plaintiff's enrollment in the PN Program or that she had any input into the decision (SOF 16-17, 23). Furthermore, there is no evidence that Sweeny was

involved in the final dismissal from the PN Program after Plaintiff's failure of NUR 109 SOF 23).

Plaintiff also alleges that Tabaka made repeated changes to Plaintiff's clinical schedule. Tabaka was only involved in one schedule change. On April 5, 2015, Tabaka was informed that there were not enough patient cases at St. Alexius Medical Center ("SAMC") for the clinical observation on April 6, 2015 (SOF 22-23). On April 5, 2015 at 10:00 p.m., Tabaka emailed all students scheduled for that clinical observation including plaintiff to cancel the observation 9SOF 22-23). This cancellation was not a re-scheduling, but a cancellation of the clinical observation, and impacted all the students not just Plaintiff (SOF 22-23). Plaintiff has not provided any evidence that she was required to reschedule the observation. Plaintiff failed to provide any evidence to support her claim that Tabaka was motivated by any improper animus when she cancelled the clinical observation.

The only other two clinical scheduling incidents were initiated by Rebecca Barron not Tabaka (SOF 23). On March 30, 2015, Plaintiff and her classmates were requested to hold two dates for clinical to be added to their schedules in mid-April (April 16th and 21st) (SOF 23). Barron confirmed the two added dates on April 1, 2015 for Plaintiff and other students (SOF 23). The additional two clinical dates were for the purpose of giving all students the same amount of clinical opportunities (SOF 23). There is no evidence that Barron knew of Plaintiff's complaints or that she added the two clinical dates based on any improper animus.

Here there was no deprivation suffered by Plaintiff that her classmates did not also suffer and there is no causal connection between the clinical change and Plaintiff's complaints. As noted above, the only reason for Plaintiff's dismissal from the program was a result of her receiving a failing grade in NUR 109.

**2. There is no genuine issue of material fact that Plaintiff cannot establish that Plaintiff Suffered a Deprivation or Plaintiff's activity of praying was a motivating factor in the Defendant's retaliation**

In her deposition, when asked about the actions of Tabaka, D'Agostino, Chavis and Marwick, responsive to Plaintiff praying with patients, Plaintiff did not describe any actions any of them had done against her (SOF 5-7). Plaintiff did not provide any evidence that she suffered any deprivation by these faculty members. Therefore, her admission in this case, bars her from meeting the second prima facie element as to those faculty members.

Plaintiff alleges that Sweeny reported Plaintiff to D'Agostino for praying with patients, then with the support of D'Agostino, Sweeny retaliated against Plaintiff by forcing her to attempt a difficult IV procedure and falsely accusing Plaintiff of being argumentative (SOF 19-21). Again, as stated above, there is simply no evidence that Sweeny ever heard the contents of the voicemail that was left on Plaintiff's phone. Plaintiff admitted to sharing the voicemail with Dean Chavis and D'Agostino on March 9, 2015, well after the date of the IV procedure (SOF 21). Plaintiff has not provided any evidence that either she or anyone else shared the contents of the voicemail with Sweeny. Moreover and more importantly, Plaintiff admitted in her deposition that the IV procedure occurred around 9:00 a.m. on February 26, 2015 and she prayed with a patient at 11:00 a.m., and then she received the voicemail from D'Agostino after the clinical that day (SOF 20). Plaintiff admitted that she only prayed with one patient during the PN program (SOF 20). It is a factual impossibility that Sweeny manipulated the IV procedure responsive to Plaintiff praying with patients because Plaintiff admitted that she prayed with the patient after the procedure (SOF 19-20).

### III. CONCLUSION

This is truly a case of "no good deed goes unpunished." In Plaintiff's history as a student at the College she has shown a pattern of failing to meet academic standards in her courses and then complaining of unfair treatment from faculty (SOF 19-22). From 2011 until her dismissal in 2015, Plaintiff would be confronted with the academic consequences of her poor performance and then complain until she was provided with additional opportunities from the College (SOF 5). During the 2014-2015 school year alone, Plaintiff exercised her academic appeal rights multiple times, until finally the College denied her academic appeal of the NUR 109 course (SOF 23-24).

Plaintiff has repaid the Colleges' efforts to work collaboratively with her with unsubstantiated claims of discrimination and retaliation. Discovery is now closed and plaintiff has wholly failed to provide any evidence to support any of her claims. It is undisputed that Plaintiff did not meet the College's academic standards. Plaintiff did not present any evidence of any similarly situated students who received preferential treatment. Similarly, Plaintiff also cannot establish the elements of her *prima facie* case of free speech and expression retaliation under the First Amendment, and her admissions bar her from rebutting the College's articulated reasons for its actions, all of which entitle the College to summary judgment on the remaining claims. For all of the foregoing reasons, Defendant, William Rainey Harper College, respectfully requests that this Honorable Court grant summary judgment in its favor, against all of Plaintiff, Student A's claims against the College, and for all other relief the Court finds just and proper in the premises.

Dated: September 28, 2018                              Respectfully submitted,

                                                       WILLIAM RAINEY HARPER COLLEGE,

By:	/s/ Zaria N. Udeh
												One of her Attorneys

Caroline A. Roselli (6279709)
Zaria N. Udeh (6311422)
ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD.
55 West Monroe, Suite 800
Chicago, Illinois  60603-5144
Telephone (312) 332-7760
croselli@robbins-schwartz.com
zudeh@robbins-schwartz.com

**CERTIFICATE OF SERVICE**

      I, Zaria N. Udeh, the undersigned attorney, hereby certify that the foregoing **Defendant's Memorandum in Support of Motion for Summary Judgment on All Counts of the Second Amended Complaint** was presented to the United States District Court for the Northern District of Illinois, Eastern Division, for filing and uploading to the ECF system, and whereby I served the foregoing upon the Plaintiff, Student A, this 28th day of September 2018.

                                            /s/ Zaria N. Udeh
                                               Zaria N. Udeh